## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 18 2020, 8:41 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anna Onaitis Holden
Zionsville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Thomas J. Flynn
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of A.G. (Minor Child)

and

K.R. (Father),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

February 18, 2020

Court of Appeals Case No. 19A-JT-2091

Appeal from the Marion Superior Court

The Honorable Danielle Gaughan, Judge Pro Tempore

The Honorable Scott Stowers, Magistrate

Trial Court Cause No. 49D09-1901-JT-2

**Crone, Judge.**

# Case Summary

[1] K.R. ("Father") appeals a trial court order terminating his parental relationship with his son, A.G. ("Child"). Finding that he has failed to establish clear error, we affirm.

# Facts and Procedural History

[2] The facts most favorable to the judgment are as follows. Child was born on September 16, 2016, and was removed from his mother ("Mother") three days later. As an infant, he was placed in relative placement with a cousin ("Cousin"), where he has remained since. Shortly after Child's removal, the Indiana Department of Child Services ("DCS") filed a petition seeking to have him adjudicated a child in need of services ("CHINS"), due to substance abuse and domestic violence in the home. At the time of the initial CHINS petition, Father was incarcerated, and it was believed that another man was Child's father. DCS subsequently amended the CHINS petition to include Father, and Father was ultimately found to be Child's biological father. Mother admitted to the CHINS allegations, and Father waived his right to a factfinding hearing. The trial court found Child to be a CHINS and ordered Father to complete Father Engagement and domestic violence services and to submit to random drug screens.

[3] Father completed a domestic violence assessment and was ordered to complete a twenty-six-week program with Batterers Intervention. He failed to appear for

the first four sessions and was unsuccessfully discharged. He did not participate in parenting time through DCS but saw Child when Child visited various relatives. He did not participate in drug screens and was in and out of incarceration during the proceedings below for drug-related offenses and resisting law enforcement.

[4] In January 2019, DCS changed the permanency plan to adoption and filed a petition for termination of parental rights. Three months before the July 2019 factfinding hearing, Father began Father Engagement and made it about halfway through the program. At the factfinding hearing, DCS family case manager ("FCM") Parrish Jones and guardian ad litem ("GAL") Annabelle Henriquez recommended termination and adoption as being in Child's best interests. The trial court issued an order with findings of fact and conclusions thereon, terminating Mother's and Father's parental relationships with Child.[1] Father now appeals the termination order. Additional facts will be provided as necessary.

## Discussion and Decision

[5] Father challenges the sufficiency of the evidence supporting the trial court's judgment terminating his parental relationship with Child. When reviewing a trial court's findings of fact and conclusions thereon in a case involving the termination of parental rights, we first determine whether the evidence supports

---

[1] Mother is not participating in this appeal.

the findings and then whether the findings support the judgment. *In re E.M.*, 4 N.E.3d 636, 642 (Ind. 2014). We will set aside the trial court's judgment only if it is clearly erroneous. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We neither reweigh evidence nor judge witness credibility. *E.M.*, 4 N.E.3d at 642. Rather, we consider only the evidence and inferences most favorable to the judgment. *Id*. "[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal." *Best v. Best*, 941 N.E.2d 499, 503 (Ind. 2011) (citations omitted). Where the appellant does not specifically challenge any of the trial court's findings, they stand as proven, and we simply determine whether the unchallenged findings are sufficient to support the judgment. *T.B. v. Ind. Dep't of Child Servs.*, 971 N.E.2d 104, 110 (Ind. Ct. App. 2012), *trans. denied*; *see also McMaster v. McMaster*, 681 N.E.2d 744, 747 (Ind. Ct. App. 1997) (unchallenged findings are accepted as true).

[6]     In *Bester*, our supreme court stated,

> The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. A parent's interest in the care, custody, and control of his or her children is perhaps the oldest of the fundamental liberty interests. Indeed the parent-child relationship is one of the most valued relationships in our culture. We recognize of course that parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights.

Thus, parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.

839 N.E.2d at 147 (citations, quotation marks, and alteration omitted).

[7] To obtain a termination of a parent-child relationship, DCS is required to establish in pertinent part:

(A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

….

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

[8] In recognition of the seriousness with which we address parental termination cases, Indiana has adopted a clear and convincing evidence standard. Ind. Code § 31-37-14-2; *Castro v. State Office of Family & Children,* 842 N.E.2d 367, 377 (Ind. Ct. App. 2006), *trans. denied.* "Clear and convincing evidence need not reveal that the continued custody of the parents is wholly inadequate for the child's survival. Rather, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *In re K.T.K.,* 989 N.E.2d 1225, 1230 (Ind. 2013) (citation omitted). "[I]f the court finds that the allegations in a [termination] petition … are true, the court *shall* terminate the parent-child relationship." Ind. Code § 31-35-2-8(a) (emphasis added).

[9] Father does not raise any challenge to the trial court's conclusions concerning the reasonable probability of unremedied conditions or threat to Child's well-being but asserts only that the trial court clearly erred in concluding that termination is in Child's best interests. To determine what is in the best interests of a child, we must look at the totality of the circumstances. *In re A.W.,* 62 N.E.3d 1267, 1275 (Ind. Ct. App. 2016). Although not dispositive, permanency and stability are key considerations in determining the child's best interests. *In re G.Y.,* 904 N.E.2d 1257, 1265 (Ind. 2009). "A parent's historical

inability to provide a suitable environment along with the parent's current inability to do the same supports a finding that termination of parental rights is in the best interests of the child[]." *In re A.P.*, 981 N.E.2d 75, 82 (Ind. Ct. App. 2012) (quoting *Lang v. Starke Cty. Office of Family & Children,* 861 N.E.2d 366, 373 (Ind. Ct. App. 2007), *trans. denied*). Likewise, "the testimony of service providers may support a finding that termination is in the child's best interests." *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010), *trans. dismissed*.

[10] FCM Jones and GAL Henriquez both recommended termination and adoption as being in Child's best interests. To the extent that Father challenges GAL Henriquez's lack of personal interaction with Child, he invites us to reweigh evidence and reassess witness credibility, which we may not do. That said, we note the trial court's finding that Father circumvented the court-authorized parenting time by disregarding it and visiting Child unofficially at family gatherings. In so doing, Father facilitated any shortage of information that service providers may have had concerning his relationship with Child. The same can be said about Father's claim that there is a dearth of information in the record concerning Child's needs, as we believe that Father's pattern of avoidance and noncooperation with DCS has contributed to any such lack of documentation.

[11] Moreover, the trial court's unchallenged findings, which stand as proven, include the following: that Father requested that DCS conduct his drug screens at his place of employment but refused to disclose where he worked and thus submitted to no drug screens; that Father had sufficient time when not

incarcerated (nearly one and a half years) to complete services and failed to do so;[2] that Father lacks stable housing and resides with friends; that Father's sobriety and stability are major concerns; that Child does not know Father and the two are not bonded; and that Child is bonded with Cousin and needs a stable and permanent home, which Cousin provides. Appealed Order at 2-3. The totality of the circumstances shows a very young boy who is bonded in his relative placement, where he has resided since infancy, and a father whose historical and current patterns indicate an inability to provide Child with a stable, safe, and permanent home. The evidence and unchallenged findings are sufficient to support the trial court's conclusion that termination of Father's parental relationship with Child is in Child's best interests. Because Father has failed to establish clear error by the trial court, we affirm.

[12] Affirmed.

May, J., and Pyle, J., concur.

---

[2] We find Father's argument that DCS failed to provide adequate service referrals and contact information for scheduling services to be a nonstarter, as the record shows that DCS made referrals and re-referrals for Father and provided him bus passes to facilitate his attendance.